IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAMANTHA SCHRADER,

    Plaintiff,

v().    CASE NO. 1:14-cv-6-MP-GRJ

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Doc. 1).  The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 13 & 14).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

### I. PROCEDURAL HISTORY

Plaintiff filed her application for supplemental income benefits on September 16, 2010, alleging a disability onset date of September 1, 1995.  (R. 19, 143-47, 170.)  Plaintiff was born in 1992 and was 20 years old at the time of her hearing.  She attended school through the twelfth grade and earned her high school diploma.  (R. 37.)

Plaintiff's application was denied initially and upon reconsideration.  (R. 69-71, 73-74.)  An administrative law judge (ALJ) conducted a hearing on June 14, 2012 and entered a decision on August 10, 2012 finding Plaintiff not disabled. (R. 19-28.)  The

Appeals Council denied Plaintiff's request for review on November 21, 2013. (R. 1-4.) Plaintiff filed the Complaint in this case on January 16, 2014.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III. SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to her mental impairments, the summary of the record is limited to evidence relevant to those impairments.

**A.   Medical Evidence**

Prior to filing her application for SSI, the Department of Education Division of Vocational Rehabilitation Services referred Plaintiff for a learning disabilities evaluation and an abbreviated emotional assessment on June 3, 2010 with psychologist Mary Ann

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

Ellis. (R. 222.) On the Behavior Evaluation Scale, Plaintiff scored within a statistically normal range for each category and the examiner opined that she would have no problems in each of the categories. (R. 224-225.) Plaintiff took the Stanford Binet Intelligence Test and received a Full Scale IQ of 74, a verbal IQ of 75, and a nonverbal IQ of 77. (R. 225.) Ellis stated that Plaintiff functions within the Borderline Impaired or Delay Classification of overall intellectual disability. (R. 226.) Ellis also performed the Wechler Individual Achievement Test on Plaintiff to measure relevant skills. (R. 227.) Plaintiff's reading and writing scores were below the first percentile of her peer group, and her mathematics score was below the second percentile. (R. 228.) Ellis diagnosed Plaintiff with Reading Disorder, Disorder of Written Expression, and Learning Disorder Not Otherwise Specified. (R. 229.)

Plaintiff's vocational rehabilitation counselor referred Plaintiff for a vocational evaluation in October 2010 to identify a feasible and attainable job goal. The vocational evaluator, Karla Wooten, reported that Plaintiff had a chief complaint of difficulty with speech and language. (R. 210.) Wooten determined that the results of the vocational evaluation showed that Plaintiff was not an appropriate candidate for college level training because her academic achievement levels were below average. (R. 214.) She opined that Plaintiff would be able to engage in vocational training that is considered more "hands-on" and concrete in nature and recommended that Plaintiff enroll in the Department of Children and Families' sponsored 40 hour training to qualify her to work in a daycare setting. (R. 215.)

After Plaintiff applied for SSI, clinical psychologist Dr. Diana Benton conducted a

mental status exam of Plaintiff in April of 2011.(R. 345.)  Dr. Benton administered a Weschler Adult Intelligence Scale-IV IQ Test.  Plaintiff received a Verbal Comprehension Index of 74, a Perceptual Reasoning Index of 75, and a Full Scale IQ of 67, which Dr. Benton noted was in the extremely low range of functioning.  (R. 348.) Dr. Benton diagnosed Plaintiff with Phonological Disorder, Expressive Language Disorder, and Learning Disability Not Otherwise Specified. (R. 349.)  Dr. Benton also noted to rule out mild mental retardation.  (R. 349.)  Dr. Carmen Tozzo-Julian, Ph.D., performed a psychological evaluation on Plaintiff in December 2010.  (R. 315.) He diagnosed Plaintiff with borderline intellectual functioning and stated that she may benefit from vocational counseling. (R. 317.)

**B.     Hearing Testimony**

At the administrative hearing on June 14, 2012, Plaintiff was 20 years old.   She testified that she had completed high school and earned a high school diploma, but was in ESD classes. (R. 37.)

She works at the Laundromat one day a week, washing and folding clothes. (R. 38-39.)  At work, she sometimes get confused if she has too many items of clothing to manage. (R. 51.)  Her mother keeps Plaintiff's earnings and pays her once a week, on Friday. (R. 45-47.)  Plaintiff owns a checking account, where she keeps some of the money she earns, and uses a debit card. (R. 47-48.)

Plaintiff testified that on a normal day, she sleeps until 11 or 12, takes a shower, eats, watches TV, goes into town and walks around, hangs out with friends, and then goes back home, eats, and watches TV. (R. 42-43.)  Plaintiff does limited chores

around the house, including dishes, dumping ice, making tea, burning trash, and feeding the dog. (R. 44.)  She has a driver's license and owns a car, co-signed by her sister. (R. 43, 52.)  Plaintiff noted that when she took the test for her driver's license, the examiners read her the questions. (R. 52.)  She babysits for her two nephews, ages 9 and 7 years old.   (R. 42.) Plaintiff was interested in working with children, but she felt the classes she took to become a daycare worker were too difficult for her. (R. 48-50.)

Plaintiff's mother also testified at the hearing.  She stated that Plaintiff worked at the laundromat, but has trouble counting back change and gets confused. (R. 54.)  Her mother testified that Plaintiff does not think logically and could not work a job without close supervision. (R. 55.)  She explained that Plaintiff has trouble making meals that require measurements. (R. 55-56.)  Plaintiff's mother clarified that Plaintiff babysits, but never more than a few hours at a time. (R. 59.)

**C.      Findings of the ALJ**

The ALJ found that Plaintiff did not meet Listing 12.05C:

"The Court must examine and take into account her 'adaptive functional' capacity in a 12.05C issue.  In this case the claimant has no problems taking care of personal needs.  She is often on her own, washes dishes, cleans, prepares light meals, does laundry, drives, shops for food and hangs out with her friends 4 to 5 nights a week.  In addition, there are no significant deficiencies of concentration, persistence, or pace.  She can watch television for extended periods of time, drive, babysit, pays her own bills and handle a savings account.  This shows abilities far above the claimant and her mother's version of complete inability to function on a job.  Therefore, the impact on the ability to work is not show to be significant as to preclude all work.  There is clearly no physical or mental reason why the claimant is unable to perform basic work activities."

(R. 25.)  After concluding that Plaintiff did not meet a Listing, the ALJ found that Plaintiff

*Case No. 1:14-cv-6-MP-GRJ*

had the residual functional capacity to perform light work with several additional restrictions. (R. 23.) The ALJ then found that jobs existed in significant numbers in the national economy that Plaintiff could perform–i.e., cleaner of vehicles, cafeteria attendant, and ticket taker. (R. 26.)

### IV. DISCUSSION

Plaintiff raises one issue on appeal. Plaintiff argues that the ALJ erred at step three of the sequential evaluation by not finding that she met the requirements of Listing 12.05C for mental retardation.

To meet a Listing, a claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant bears the burden of demonstrating that she meets a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

The Listing at issue, Listing 12.05C, addresses mental retardation.[21] To meet this Listing, a claimant must have (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) manifested deficits in adaptive behavior before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The claimant must also meet one of the four sets of criteria in paragraphs A, B, C, or D. 20 C.F.R. part 404, subpt. P app. 1, 12.00 (A). Listing 12.05C requires a showing of (1)

---

[21] In 2013, the regulations changed the designation of Listing 12.05 from mental retardation to intellectual disability. However, because the ALJ's opinion was issued prior to the change in the regulations, it refers to the Listing as mental retardation. This opinion will refer to the impairment as mental retardation to maintain consistency between the ALJ's opinion and the parties' briefs.

a valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at 12.05C.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. (R. 21-22.) While the ALJ is not required to explicitly discuss each Listing where she applies the appropriate sequential analysis and her conclusions are supported by substantial evidence---*see, e.g., Battle v. Astrue,* 243 Fed. Appx. 514, 519-21 (11th Cir. 2007) (unpublished)[22] (rejecting claimant's argument that ALJ is legally required to explicitly evaluate the IQ score and 12.05 Listing)— the ALJ in this case expressly discussed Listing 12.05C, finding that Plaintiff did not have deficits in adaptive functioning sufficient to meet the listing. (R. 25.)

Plaintiff's sole challenge to the ALJ's conclusion that Plaintiff did not meet Listing 12.05C focuses upon the ALJ's conclusion that Plaintiff did not have sufficient deficits in adaptive functioning to meet Listing 12.05C.

While there is no definition of adaptive functioning in Listing 12.05 the applicable regulations permit an ALJ to use "any of the measurement methods recognized and endorsed by the professional organizations" to satisfy the elements of Listing 12.05. 67 Fed. Reg. 20018, 20022. Plaintiff contends that the ALJ must use the standard set by the American Psychiatric Association ("APA"), which defines adaptive-skills limitations

---

[22] Although unpublished opinions are not binding on this Court, they are persuasive authority. 11th Cir. R. 36-2.

*Case No. 1:14-cv-6-MP-GRJ*

as "[c]oncurrent deficits or impairments...in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, functional academic skills, work, leisure, health, and safety." The Social Security Administration, however, expressly declined to adopt the APA's definition, stating that "[t]he four major professional organizations in the United States that deal with [mental retardation] have each established their own definition....the method of measuring the required deficits in adaptive functioning differ among the organizations." 67 Fed. Reg. 20018. While an ALJ may apply different definitions of "adaptive functioning," the Eleventh Circuit makes clear that when claimant's daily activities and behavior are significantly inconsistent with their valid IQ score, the claimant does not meet Listing 12.05C. *Outlaw v. Barnhart*, 198 F. App'x 825, 827 (11th Cir. 2006); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

In her opinion, the ALJ determined that Plaintiff had no significant deficits in her adaptive functioning. In making this determination the ALJ pointed to Plaintiff's testimony that she could take care of her personal needs, wash dishes, clean, prepare light meals, do laundry, shop for food, work several hours per week, hang out with friends, babysit, pay her own bills, and handle a savings account. (R. 25.) Further, the ALJ relied upon the fact that Plaintiff has a driver's license, owns a car, drives to her appointments, and transports family members. (R. 37-38, 43-52.) She frequently watches television and hangs out with her friends several times a week. (R. 42-43.) Notably, the ALJ highlighted in her opinion that Plaintiff completed high school, earned

her diploma, and began vocational classes to become a daycare worker. (R. 37, 48-50.)

The ALJ noted that despite Plaintiff's full scale IQ of 67, which was within the borderline to mild retarded intellectual functioning range, both examining psychologists opined that Plaintiff was capable of performing light work. (R. 24-25.) The opinions of the examining psychologists were consistent with that of Plaintiff's vocational evaluator, who also found Plaintiff capable of working and studying to be a childcare giver. (R. 24.) During Plaintiff's testimony, she agreed that she would be able to work as a ticket-taker. (R. 49-50.) The ALJ discussed and relied upon this evidence in determining that Plaintiff does not have the requisite deficits in adaptive functioning to meet Listing 12.05C and therefore the Court concludes that the ALJ's determination is supported by substantial evidence in the record.

Plaintiff contends that she does have deficits in her adaptive functioning pointing to her lack of competence to manage funds and her reading and comprehension scores, which were in the range of a second grade student. (Doc. 13 at 16-17.) With regard to Plaintiff's ability to manage funds, however, Plaintiff testified that she has a checking account, uses a debit card, and pays bills, suggesting that her ability to manage funds is not as limited as Plaintiff suggests. Furthermore, although Plaintiff's test results show that she reads at a second grade level, a low reading ability alone does not entirely preclude her from working. Despite her low reading ability, Plaintiff completed high school and works at a Laundromat, thus suggesting that her activities and behavior do not demonstrate a complete inability to work.

*Case No. 1:14-cv-6-MP-GRJ*

Lastly, relying upon *Siron v. Comm'r*, 556 F. App'x 797 (11th Cir. 2014)—a case from this Court— Plaintiff argues that this case mirrors *Siron*. Plaintiff is wrong. Rather than mirroring this case *Siron* involved a different Listing and a different issue. *Siron* concerned Listing 12.05B and not, as here, Listing 12.05C, which uses a different standard than 12.05B. Second, the issue addressed by the Eleventh Circuit in *Siron* had nothing to do with whether the claimant had deficits in adaptive functioning but rather focused upon the ALJ's use of the claimant's perceptual reasoning index (PRI) score of 73 instead of using the claimant's lower full scale IQ of 59, as required by § 12.00(D)(6)(c). In this case, the ALJ without comment presumed that Plaintiff's lowest IQ score was valid and utilized the lowest score in his evaluation. In short, there is nothing in *Siron*, which supports Plaintiff's argument that the ALJ committed error in this case.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in finding that Plaintiff did not meet the requirements of Listing 12.05C because Plaintiff failed to demonstrate that she had the required deficits in adaptive functioning to satisfy Listing 12.05C.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 12th day of January 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.